## MUDD v. SCHOEN.
### Patent Appeal No. 2824.

Court of Customs and Patent Appeals.
Jan. 25, 1932.

Pennie, Davis, Marvin & Edmonds, of New York City (C. M. Fisher, of Washington, D. C., and W. B. Morton, of New York City, of counsel), for appellant.

Harry Frease, of Cleveland, Ohio, for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GRAHAM, Presiding Judge.

The present appeal is an interference proceeding declared by the United States Patent Office between the application of Garrett W. Mudd, appellant, filed March 27, 1926, and a patent No. 1,654,706, issued to Otto A. Schoen, appellee, on January 3, 1928, on an application filed May 20, 1927.

There are four counts in the interference, of which counts 1 and 2 are thought to be representative, and which are as follows:

"1. A packing machine including a table, a conveyor for moving articles to be packed to a point adjacent to the table, a reciprocating frame for moving the articles from the conveyor onto the table, and means for automatically stopping the reciprocating frame when a predetermined number of articles has been placed upon the table.

"2. A packing machine including a table, a conveyor for moving articles to be packed to a point adjacent to the table, a reciprocating frame for moving the articles from the conveyor onto the table, and means operated by the placing of the articles upon the table for automatically stopping the reciprocating frame when a predetermined number of articles has been placed upon the table."

The counts involved are claims from the said Mudd application, which were added to the application by amendment after the issuance of the said Schoen patent, and were copied from said patent for the purpose of establishing this proceeding.

A rule having been entered against the junior party Schoen to show cause, he moved to dissolve the interference on the ground that Mudd could not make the counts in issue, and upon the further ground that, if said counts were construed to read on Mudd's disclosure, they would not be patentable in view of the prior art. This motion having been denied by the law examiner, priority was awarded to Mudd by the examiner of interferences. On appeal the Board of Appeals found that Mudd was not entitled to make the claims, reversed the examiner of interferences, and awarded priority to the junior party Schoen.

The subject-matter of the interference is a machine for placing cans or other similar packages in position for packing in cartons or other receptacles, in measured numbers and automatically. The operation of the two machines is fairly described by the Board of Appeals in the following language:

"* * * In both machines the cans are brought to the machine by means of a conveyor supplying a single row of articles. In Schoen's machine a belt conveyor carries the row of cans in front of a tilting table where a reciprocating pusher sweeps successive groups of four cans laterally off of the conveyor onto the tilting table. After three groups of four cans have been thus pushed from the conveyor onto the table the outermost row strikes a trigger at the outer edge of the table which stops the reciprocation of the pusher and holds it until the cans are removed. An inverted carton is manually placed over the twelve cans on the table and the table is tilted to vertical position to enable the group of cans to be removed in the carton. Thereafter the reciprocating frame can resume its reciprocation.

"In Mudd's machine a row of cans roll down a chute or are fed to the machine by a belt conveyor. From the end of the conveyor chute the cans are received in groups of four on a transfer member 36 aligned with the chute and which transfers the cans to a receiving member 32 which is a support carried on an endless chain and which is lowered step by step to receive four successive groups from the transfer member. A trigger positioned at the end of the transfer member 36 causes the transfer member to move to transfer the group of cans as soon as the end can of the row strikes the trigger. The transfer member makes one reciprocation and the cans are removed from it to the receiving member 32 by a pivoted sweep 49 which drops behind the cans as the transfer member returns. The transfer member then disconnects and stands idle till the trigger 99 is again actuated by another row of oncoming cans. When four rows of four cans have been received on the elevator member 32 the group of sixteen cans is then pushed laterally onto a receiving table 24."

■ The essential elements of the counts in issue, taking count 1 as an example, are: First, a table and a conveyor to move the articles to be packed to a point adjacent thereto; second, a reciprocating frame to move said articles from the *conveyor* to the *table;* third, a means to automatically *stop the reciprocating frame when a predetermined number of articles has been placed upon the table.*

From a consideration of the character of the party Mudd's device, as detailed hereinbefore, and from an inspection of his specification and drawings, it is plain that the counts of the interference do not read upon Mudd's disclosure, in these respects: There is no reciprocating frame in Mudd's device which moves the articles from the conveyor to the table. Again, there is no means to automatically stop the reciprocating frame when a predetermined number of articles is placed upon the table. The Mudd machine transfers its predetermined number of cans by a reciprocator, from the conveyor, not to the table, but to a traveling platform, from which platform, by an ejector, it is transferred to the table. The Mudd reciprocator does not stop by reason of a means, when a certain number of cans has been placed upon the table. It starts by reason of a trigger that is tripped after which it reciprocates, places its load upon a traveling platform, and returns for another load. It is not stopped by the transfer of the load or of any number of loads, from the traveling platform to the table, but continues to function. These distinctions are well pointed out by the Board of Appeals.

It is argued that the counts of the interference should be broadly construed and that, as so broadly construed, they will read upon appellant's disclosure.

■ It has been held on repeated occasions that the counts of an interference will be given the broadest interpretation which they reasonably support. Humiston v. Voorhees, 57 App. D. C. 344, 23 F.(2d) 765; Stern et al. v. Schroeder et al., 36 F.(2d) 518, 17 C. C. P. A. 690; Slattery v. Larner, 36 F. (2d) 298, 17 C. C. P. A. 725; Deibel v. Heise et al., 46 F.(2d) 570, 18 C. C. P. A. 907; In re Nicolson, 49 F.(2d) 961, 18 C. C. P. A. 1468.

■ It is equally well established law that where there are expressly defined limitations in the claims of a patent which afterwards constitute the counts of an interference, these limitations may not be ignored in ascertaining the right of a party to the interference

to make such counts. In re Williams, 39 F. (2d) 702, 17 C. C. P. A. 989; In re Bijur, 40 F.(2d) 999, 17 C. C. P. A. 1134; Myers v. Spencer, 46 F.(2d) 716, 18 C. C. P. A. 956; Hartog v. Long, 47 F.(2d) 365, 18 C. C. P. A. 993; Moore v. Greene, 48 F.(2d) 960, 18 C. C. P. A. 1317; Dreyfus v. Lilienfeld, 49 F.(2d) 1055, 18 C. C. P. A. 1526.

Two cases quite markedly illustrate the view of this court as to such expressed limitations. In Thompson v. Pettis, 44 F.(2d) 420, 18 C. C. P. A. 755, the count in issue provided for a means *embedded* in a plug. We held that a wire loosely passing through said plug did not satisfy the language of the count, as it was not "embedded."

In Field v. Stow, 49 F.(2d) 1072, 18 C. C. P. A. 1502, the claim and count in issue provided for a "floor supported on sill flanges." We held that a disclosure of a similar floor supported by the under side of sill flanges was not sufficient to satisfy the count.

In the case at bar, the counts of the issue, with their express limitations, do not read upon appellant's disclosure. Therefore, without reference to the other matters raised by appellant's brief, and which do not affect the issues, the decision of the Board of Appeals is affirmed.

Affirmed.

BLAND and LENROOT, Associate Judges, concur in the conclusion.